### RICHARDSON v. LOUISVILLE BANKING CO. OF LOUISVILLE, KY.

(Circuit Court of Appeals, Fifth Circuit. May 16, 1899.)

#### No. 813.

1. BANKS AS CORRESPONDENTS—COLLECTIONS—CONTRACTS.

In response to letters soliciting an account and making an offer of services for the care of business in its neighborhood, a bank wrote, "If we understand your proposition, you agree that you will take from us all items on [neighboring states], crediting our account with the total of our letter on receipt at par, and remitting New York at par the year round on our balance in excess of $10,000." The correspondent was directed to advise of collections by the collection number of the remitting bank, so that they could be checked without difficulty. Each letter of advice contained the passage: "I inclose for collection and ...... Please advise collection by number, and return immediately if not honored." The list of items frequently directed protests, which directions were followed, and immediately on such protest the amount of such item and protest fees were charged back to remitting bank. Some items were charged with the note "Held," probably meaning held for future direction. Of many of the items the remitting bank was the mere mandatary for collection. Held, that the contract was one for collection of the items forwarded, and not of purchase, and the forwarding bank was entitled to all items not collected before suspension of the collecting bank, and afterwards collected by subagents, and traced to the possession of the receiver appointed to wind it up.

2. NATIONAL BANKS—COLLECTIONS—IDENTITY OF FUNDS.

Where it is not shown that a certain collection made by a receiver of an insolvent national bank was forwarded by a correspondent of the bank, nor included in the list of items sent, it is not sufficiently traced; and this though the receiver testified that the item was collected for the forwarding bank.

3. NATIONAL BANKS—RECEIVERS—PAYMENT OF INTEREST.

An order directing payment of interest by the receiver of a national bank from date of judicial demand is erroneous, as funds coming into the hands of a receiver are turned over to the comptroller, and could not earn interest, and any payment of interest would necessarily be taken from some other trust fund; and this particularly where the involved circumstances of the case made it impossible to pay over the amount without investigation and an accounting.

4. RECEIVERS—DECREE—UNDUE LIMITATIONS.

A decree which commands the receiver of an insolvent national bank to pay over a large sum of money within 10 days, where, as a matter of fact, and in accordance with law, the funds are in the custody of the comptroller of the currency, unduly limits the time for satisfying the decree, and might result in the receiver being in contempt for not paying over moneys which are not within his control.

Appeal from the Circuit Court of the United States for the Eastern District of Louisiana.

On the 5th of March, 1895, the American National Bank made a written proposal to the Louisville Banking Company as follows:

"Gentlemen: As we have not the pleasure of an account from you, and being in a position to serve you to our mutual advantage, we beg leave to offer

you our best services for the care of any business you have in this section, assuring you of our very best attention to your interest. If you will carry an average balance with us of $10,000, we will take your items on Louisiana, Mississippi, Georgia, Alabama, and Texas, crediting your account with total of your letter on receipt at par, remitting New York as directed at the same rate the year round. On balance in excess of $10,000 we will allow 3% per annum interest. Awaiting the favor of your views on the above, we are,

"Yours, very truly,                         W. W. Girault, Cashier."

The following correspondence ensued:

"March 7, 1895.

"W. W. Girault, Esq., Cashier American National Bank, New Orleans, La.—Dear Sir: Your favor of the 5th inst. is received, and contents carefully noted. In reply, we beg to say that for some years past our Louisiana business has been handled for us by the Union National of your city. The Union National has treated us with great liberality, but we have never enjoyed the advantages which I understand your proposition to offer us. We would not wish to maintain a balance in New Orleans upon an interest basis, but, if we understand your proposition, you agree that you will take from us all items on the states of Louisiana, Mississippi, Georgia, Alabama, and Texas, crediting our account with the total of our letter on receipt at par, and remitting New York at par the year round on our balance in excess of $10,000. If we understand from this that you would remit our balance daily direct to our New York correspondent, advising us of the amount remitted, in excess of $10,000 to be maintained in your hands, it is a proposition which we are ready to seriously consider. If this is the proposition, therefore, you mean to submit to us, will you be kind enough to state it to us in distinct terms, and whether, if we enter into such an agreement, we may consider it in the nature of a contract to be binding for not less than one year. We would not care to disturb the very pleasant relations we have now existing, if for any cause they were liable to be disturbed after a short trial of your proposition might be put into effect. Of course, there are some points in all the states you name where we have reciprocal relations, and which we will continue to handle as we do now, but your proposition would be very useful to us, and would enable us to concentrate a great deal of zigzag channels.

"Yours, truly,                         John H. Leathers, Cashier."

"American National Bank.

"New Orleans, March 9th, 1895.

"John H. Leathers, Esq., Cashier, Louisville, Ky.—Dear Sir: Replying to your esteemed favor of the 7th inst., our proposition of the 5th inst. is intended to cover the period of one year, and, if mutually satisfactory at the end of that time, will be happy to extend again. On balance in excess of $10,000, we will allow you 3% per annum interest; but, if you do not care to carry a balance above that amount, we will make daily remittance of your balance over $10,000 direct to your New York correspondent, and advise you. We have extended you a very liberal par list, and I am sure can transact any business that you might be pleased to intrust to us in a manner that will meet with your entire satisfaction. Hoping to hear from you favorably, we are,

"W. W. Girault, Cashier."

"March 11, 1895.

"W. W. Girault, Esq., Cashier American National Bank, New Orleans, La.—Dear Sir: Your favor of the 9th is received, and contents fully noted. In reply, I beg to say that we accept the proposition so contained in the 5th inst., and to cover the period of one year from this date, to be continued at the end of that time if mutually satisfactory. We commence sending you to-day on the basis as proposed. We will thank you to remit your balance daily, at least for the present, in excess of ten thousand dollars, which amount we are to carry with you, to the Hanover National Bank of New York; advising us daily of the amount remitted. We will ask you to be good enough to instruct the proper department in your bank to carefully advise our collections by our number, that

we may have no difficulty in checking them properly. The service you propose to render is certainly a very liberal one, and we trust that you will be able to do so with profit and pleasure to yourselves; and we very cheerfully agree to maintain the balance of $10,000 in your hands, in view of the service you offer us. Trusting that the arrangement may be mutually profitable, pleasant, and satisfactory, we are,                    John H. Leathers, Cashier."

The two banks did business under the contract included in the foregoing correspondence, without any change or modification, for the period of one year, during which time the Louisville Banking Company forwarded items invariably with the following direction:

"American National Bank, New Orleans, La.—Dear Sir:  I inclose for collection and ......  Please advise collections by number, and return immediately if not honored."

On receipt of which the American National Bank gave credit on its books to the Louisville Banking Company for the total sum of the items forwarded, and remitted daily the balance on its books to the credit of the Louisville Banking Company in excess of $10,000.

In the month of March, 1896, the two banks modified their contract, as shown by the following correspondence:

"American National Bank.

"New Orleans, La., March 14, 1896.

"John H. Leathers, Esq., Cashier Louisville Banking Company, Louisville, Ky.—Gentlemen:  Replying to your favor 12th inst.  We regret exceedingly that our proposition of the 9th inst. does not meet your views, in the matter of continuing your account.  We appreciate the business you send us very highly indeed, and are unwilling to have it diverted to other channels; but many of the points you send us cost us exchange now, and we thought a weekly remittance of your entire balance at a fair rate would be satisfactory.  At any rate, we want you to stay with us, and are willing to continue on the old basis, except, instead of remitting daily, we will remit weekly at par.  Hoping this will settle the matter to your satisfaction, we remain,

"Yours, truly,                    W. W. Girault, Vice President."

"Mar. 16/96.

"W. W. Girault, Vice President American National Bank, New Orleans, La.—Dear Sir:  Your favor of the 14th just received, and contents noted, and the proposition you now submit is entirely satisfactory.  We do not desire ourselves to make any change in our New Orleans account, but you understand, of course, we have to make the very best arrangements we can, because, as we have said before, competition in the banking business has thrown the doors wide open, and we have been compelled in self-defense to make the best arrangements we can.  Under the same arrangement as last year; you remitting our balance at par once a week instead of daily, all in excess of $10,000, which average balance we are to maintain in your hands, and we to have the option of sending you as we have been doing.  We might suggest this to you, which we will be very glad to do, and may be of some service to you:  We will use for you in whole or in part exchange on Louisville, Cincinnati, Chicago, and St. Louis, and you can use exchange on these points in place of New York whenever it may be convenient for you to do so; and probably at times this arrangement may be of advantage to you.  We wish to say furthermore that, where we have dealings with a bank, we want to have them not only mutually profitable, but pleasant at the same time; and we will be ready at all times to help you in any territory we may be able to handle for you, possibly on better terms than you may now enjoy.  We recognize the fact that you are doing a great deal for us in the territory you propose to handle for us.  At the same time, we hope that with an average balance of $10,000 in your hands, and our offer to give you the option of remitting us our balance above that amount in the various cities named above, once a week, that it will compensate you.  We trust that it will be agreeable to you to have it understood that this new arrangement shall continue in force for one year.  We ask this because we like to feel

settled in our arrangements with corresponding banks, and not feel that any day we may receive notice of its discontinuance. You can make any time in the week you please. We should be glad, however, to have the day you will remit definitely fixed.

"Yours, truly, John H. Leathers, Cashier."

"American National Bank.

"New Orleans, La., March 18, 1896.

"John H. Leathers, Esq., Cashier Louisville Banking Company, Louisville, Ky.—Dear Sir: Yours of the 16th inst. to hand, and it is with pleasure that we note that we are still to be favored with your account. This new arrangement, entered into 16th, we are willing to continue for one year from that date. We note that it suits you just as well to receive our check on certain cities on New York, and this will [be] quite a convenience to us, and we are quite sure the business between us will be mutually satisfactory. Monday is the day we have selected to remit your excess balance, and, unless you prefer some other day, we will make Monday the day.

"Yours, truly, W. W. Girault, Vice President."

"March 30, 1896.

"W. W. Girault, Esq., Vice President American National Bank, New Orleans, La.—Dear Sir: Your favor of the 18th just received, and contents noted, and all right. The day you have selected to remit our excess balance is perfectly satisfactory. We untie [unite] with you in the hope that, with the modifications made in the old contract, our future relations will be mutually profitable and pleasant.

"Yours, truly, John H. Leathers, Cashier."

The two banks continued to do business under the modified contract from March, 1896, to the date of the suspension of the American National Bank, which bank closed its doors at 3 p. m. August 5, 1896, and never afterwards opened them for business. It announced its suspension by posting a notice thereof on the doors early in the morning of the following day, August 6, 1896. The same day, by direction of the comptroller of the currency, Edward I. Johnson, bank examiner, took possession of the books, assets, and property found in the bank. Subsequently the appellant, as receiver, took possession of the bank's property; receiving all sums that the bank examiner had collected in the interim. At the time the American National Bank closed its doors, it had received from the Louisville Banking Company various items in remittances of recent date, all of which had been credited on the books of the American National Bank to the Louisville Banking Company, but which items had not been collected by the bank and the proceeds thereof mixed with its funds. Many of these items were afterwards collected by the examiner and other collection agencies, and came to the hands of the receiver. The present suit is one to charge the receiver, as the trustee of the Louisville Banking Company, for all the items transmitted by the said bank to the American National Bank, which items at the date of the suspension of the American National Bank had not been collected by the said bank, but which were afterwards collected by the receiver; the same never having been mixed in, or become part of, the funds of the American National Bank, and now subject to full identification. The court below recognized the equity of the Louisville Banking Company's demands, and, after lengthy investigation, and hearing of much evidence, rendered a decree, as shown by the amended record, as follows:

"This cause came on to be heard on the pleadings, exhibits, and evidence adduced, and was argued by counsel, whereupon, and on consideration thereof, the court being satisfied that the relation of principal and agent existed between the complainant and the American National Bank of New Orleans; that said American National Bank was hopelessly insolvent, and that to the knowledge of the managing officers, the president and cashier, of said bank, on or before July 1, 1896; that said American National Bank was guilty of fraud in accepting the collections of complainant transmitted in said complainant's letters of July 25, 27, 28, 29, 30, and 31, and August 1 and 3, 1896; that complainant has traced the items for the collections therein set forth to the hands of the

defendant, the receiver; and that the same have come into the possession of the said receiver, as follows, to wit:

| | |
|---|---|
| Items on points out of New Orleans sent for collection in complainant's letter of August 3, 1896, collected by the examiner in charge, through the Louisiana National Bank, amounting to................................................... | $ 4,558 96 |
| Items remitted from sundry banks to examiner after failure... | 1,584 59 |
| Items in complainant's letter of July 31st, August 1st, and 3d, on New Orleans, collected through the examiner, and turned over to the defendant as receiver, including a United States treasury draft for $55, amounting to...................... | 986 63 |
| Items collected by the bank examiner and said receiver through W. L. Moody & Co., amounting to......................... | 1,324 89 |
| Items collected by the bank examiner and said receiver through the Farley National Bank of Montgomery, Ala., amount to.. | 1,827 53 |
| Items collected by the bank examiner and receiver through the Fourth National Bank of Atlanta, Ga., amounting to........ | 1,045 97 |
| All of which came into the hands of the receiver, amounting in the aggregate to the sum of............................. | $11,328 57 |

—And that said amount of $11,328.57 constituted and is a trust fund in the hands of the defendant receiver as trustee for the complainant, and that the complainant is entitled to be paid the same, with interest, out of the funds which came into the hands of the defendant as such receiver: It is therefore ordered, adjudged, and decreed that the complainant have and recover from the defendant, F. L. Richardson, receiver of the American National Bank of New Orleans, the sum of $11,328.57, with interest at five per cent. per annum from the date of the filing of the bill of complaint herein, together with all costs, which is decreed to be paid within ten days by priority over all unsecured creditors; that for the balance of complainant's claim, to wit, $26,967.86, complainant be, and is hereby, recognized as a general creditor, entitled to participate pro rata with the depositors and other general creditors of said American National Bank of New Orleans in the distribution of its assets, and it is ordered, adjudged, and decreed that said defendant receiver pay to complainant such pro rata thereof as has been or may be paid to other unsecured creditors of said American National Bank."

F. N. Butler, for appellant.

E. M. Hudson, John D. Rouse, and Wm. Grant, for appellee.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

After stating the facts, the opinion of the court was delivered by PARDEE, Circuit Judge.

The main contention on this appeal relates to the construction of the correspondence passing between the two banks in 1895. The appellant, receiver of the American National Bank, contends that under the contract, as shown by the correspondence, whenever an item was remitted by the Louisville Banking Company to the American National Bank, and by that bank received and credited to the account of the Louisville Banking Company, said item then and there became the property, by purchase, of the American National Bank, and that the resultant relation between that bank and the Louisville Banking Company was solely that of debtor and creditor. On the other hand, the contention is that the correspondence was with the view to collections of commercial paper, and the arrangements made provided only for the collection of such items as

should be remitted by the Louisville Banking Company to the American National Bank, and that when the American National Bank became insolvent and closed its doors the mandate for collection was withdrawn, and the Louisville Banking Company became entitled to the return of all the items which had not been collected by the American National Bank. It is to be noticed that the first letter, written by the American National Bank, was inviting an account, and making an offer of services for the care of any business that the Louisville Banking Company might have in the New Orleans section. It is very far indeed from a proposition to purchase from the Louisville Banking Company all such items of checks and commercial paper as the said banking company might have in that locality. That the Louisville Banking Company had in mind solely the matter of collecting such items as it might have in the New Orleans locality fully appears from its letter of March 11, 1895, which, among other things, contains this passage: "We will ask you to be good enough to instruct the proper department in your bank to carefully advise our collections by our number, that we may have no difficulty in checking them properly." The arrangement for business provided for in the letters is entirely consistent with the theory that the provisions related wholly to a matter of collection, and it is inconsistent with any theory that it was a matter of sale and purchase which was in contemplation of the parties. The course of business between the two banks also shows clearly that the arrangement between the parties was understood to be one for collection solely. Each letter of advice forwarded by the Louisville Banking Company contained this passage: "I inclose for collection and ....... Please advise collections by number, and return immediately if not honored." The list of items as forwarded frequently contained instructions with regard to the protest, or waiver of the same, of specific items; and the books of the American National Bank show that, immediately on protest of any item, the item itself and the protest fee were charged back to the Louisville Banking Company; and in some instances items were charged back with the simple note "Held," probably meaning "held for further direction." Another fact to be noticed in this connection is that for a large portion, if not all, of the items forwarded, the Louisville Banking Company was not the owner of the same for sale, or with power to sell, but was the mere mandatary for collection. Counsel for the appellant bases his entire argument upon the language used by the Louisville Banking Company in its letter of March 7, 1897, as follows:

"We would not wish to maintain a balance in New Orleans upon an interest basis, but, if we understand your proposition, you agree that you will take from us all items on the states of Louisiana, Mississippi, Georgia, Alabama, and Texas, crediting our account with the total of our letter on receipt at par, and remitting New York at par the year round on our balance in excess of $10,000."

—And argues therefrom that the American National Bank was compelled to take at par all the checks, notes, and drafts on persons or corporations in Louisiana, Mississippi, Georgia, Alabama, and Texas that the Louisville Banking Company should send, and that the American National Bank was obliged to pay the Louisville Bank-

ing Company for said checks, etc., on receipt of said items, and says that:

"If an agreement on the part of the American National Bank to take the checks, notes, and drafts in controversy from the Louisville Banking Company at par, and to pay the full face value thereof to the New York correspondent of the Louisville Banking Company, on receipt of said items, or within one week thereafter, is not a contract of sale, which passed the title of those items to the American National Bank, we fail to appreciate what constitutes a contract of sale. One of the parties agrees to sell a thing for a fixed price, and the other promises to buy the thing at the price agreed upon, or to pay for it upon delivery, or within a week from that time. All the essential elements of a contract of sale are thus contained in said agreement, while the conditions of a contract of agency are wanting."

We do not think that any such effect can be given to the clause referred to, and the promise and agreement to take all such items, crediting the account and forwarding at par, cannot be understood as contracting that the taking was by purchase; but the whole tone and purport of the letter are rather to the effect that the word "take," in that connection, meant to handle, collect, look after. "Checks deposited and credited as cash do not become the property of the bank, so that it takes the risk upon itself, even though the depositor has been allowed to check against the deposit before the paper is collected; and the depositor can recover the check or other paper, if it is still in the possession of the depositary." Morse, Banks (3d Ed.) § 586; Beal v. City of Somerville, 1 C. C. A. 598, 50 Fed. 647. See Newm. Bank Dep. p. 211, § 209. See, also, Balbach v. Frelinghuysen, 15 Fed. 675. As we construe the contract between the parties to be one relating to the collection, and not the purchase, of the items forwarded, the case is controlled by Bank v. Armstrong, 148 U. S. 50, 58, 13 Sup. Ct. 533. See, also, Evansville Bank v. German-American Nat. Bank, 155 U. S. 564, 15 Sup. Ct. 221. And the complainant below was entitled to a decree for all items not collected by the American National Bank before suspension, and afterwards collected by subagents, and traced to the possession of the receiver.

The appellant also contends that many of the items allowed for in the decree appealed from have not been sufficiently traced to identify the amounts as coming to the hands of the receiver. In regard to this we have made as full an examination as the importance of the case warranted, and find that the objections to none of the items allowed are well founded, except in regard to certain checks which were collected by Attorney Denegre on the 6th of August, aggregating $931.63, which were put in a separate envelope, and were turned over by Denegre to Examiner Johnson, and by Johnson handed intact to the receiver. In the testimony of Johnson, one item on the Louisiana National Bank of $135 was collected for account of complainant, while the evidence does not show that any such item was ever forwarded by the Louisville Banking Company, and it is not mentioned in any list of items forwarded by the Louisville Banking Company to the American National Bank. We think that this item is not sufficiently traced, and it should not have been included in the decree of the court below.

The decree of the court below allows interest against the receiver from judicial demand. We are of opinion that this was erroneous. The funds collected, coming into the hands of the receiver, turned over to the comptroller, could not earn interest, and any interest to be paid thereon would be necessarily taken from some other trust fund. The involved circumstances surrounding the case made it improper, if not impossible, for the receiver to pay over the amount for which he is charged as trustee without an investigation and an accounting; and we think he was in no fault, but rather in the fulfillment of his official duties, in refusing to recognize complainant's demands until they were judicially determined. As a general rule in equity, trustees are not required to pay interest unless they are in fault in the management of the trust fund, or have so used the trust fund as to earn interest.

An objection is made to the form of the decree rendered in the court below, in that it commands the receiver to pay over to the complainant a certain large sum of money within 10 days, when, as a matter of fact, and in accordance with law, the receiver is not in personal custody of the funds in question, but the same are in the hands of the comptroller of the currency. The effect of the decree, as rendered, might be that the receiver would be in contempt for not paying over moneys which are not within his control. See Merrill v. Bank, 41 U. S. App. 529, 21 C. C. A. 282, and 75 Fed. 148.

Admitting these last-mentioned objections, the decree of the court below should be reversed, and the cause remanded, with instructions to enter a decree as follows: It is ordered, adjudged, and decreed that the complainant, the Louisville Banking Company, do have and recover from the defendant, Frank L. Richardson, receiver of the American National Bank, the sum of $11,193.59, which said receiver is ordered to pay, out of the funds which have come to his hands as receiver, within 30 days from the signing of this decree, and by priority over all unsecured creditors of the American National Bank, or that he do within said delay certify the same to the comptroller of the currency, with a copy of this decree; and it is further ordered and decreed that for the balance of complainant's claim, to wit, the sum of $27,102.86, the said banking company be, and is hereby, recognized as a general creditor, entitled to participate pro rata with the depositors and other general creditors of said American National Bank of New Orleans in the distribution of its assets; and it is ordered and decreed that the said defendant receiver pay to said Louisville Banking Company such pro rata thereon as has been or may be paid to other unsecured creditors of said American National Bank, or do certify the same to the comptroller to govern his action in the premises. And it is so ordered.