## AMERICAN SUGAR REFINING CO. v. ANDERSON.
### No. 712.

District Court, W. D. Kentucky.
Aug. 2, 1937.

Bruce & Bullitt, of Louisville, Ky., for plaintiff.

Nichols, Morrill, Wood, Marx & Ginter, of Cincinnati, Ohio, and Edward Humphrey, of Louisville, Ky., for defendant.

HAMILTON, District Judge.

In this action the plaintiff, the American Sugar Refining Company, seeks to establish a preferred claim of $72,818.42 against the receiver of the National Bank of Kentucky, in liquidation. A brief statement of the facts is substantially as follows:

For many years before the closing of the National Bank of Kentucky, the plaintiff had an arrangement with it to keep on deposit a balance of $10,000, not subject to check, and in consideration therefor the bank agreed to credit to the refining company, at par, on date of receipt, all collection items sent it by the plaintiff and remit in foreign exchange on New York twice weekly the amount credited, less $10,000.

At the time the bank went into liquidation, the plaintiff had uncollected two of its drafts directed to the Chemical Bank & Trust Company, N. Y., one for $27,388.45, dated November 12, 1930, and the other for $31,036.88, dated November 15, 1930. They were not paid because not presented to the drawee until after the National Bank of Kentucky had closed, although they represented current credits and there was no delay by the payee in presenting them to the drawee for payment. At the time of closing, the bank had in its possession and in course of collection checks of the plaintiff totaling $24,367.65 which were collected by the receiver, and also checks in the amount of $1,450.69 which were included in one of the drafts in the possession of the plaintiff. The latter amount was used by the receiver as an offset against the deposits of corresponding banks so that the total amount realized by him was $25,818.34.

In the course of current business the bank had collected $51,001.06 which had not been realized by the plaintiff because of the unpaid drafts heretofore mentioned; $25,128.01 of this sum was received through the Federal Reserve Bank on checks on banks outside of Louisville and was credited to the National Bank of Kentucky by the Reserve Bank; $11,909.72 was collected in the same manner on checks on Louisville banks and likewise credited; $334.34 represented checks drawn on depositors of the National Bank of Kentucky and was charged against their accounts; $13,628.06 represented checks drawn on corresponding banks of the National Bank of Kentucky and these were charged against their balances.

The National Bank of Kentucky, on November 16, 1930, the date of closing, owed to the plaintiff, American Sugar Refining Company, $82,819.40. It had paid to the plaintiff all sums collected for it up to and including November 6, 1930, and on November 8, 1930, the bank delivered to the plaintiff drafts on New York including all credits and $4,000 in excess, which reduced its maintained deposit to $6,000.

The plaintiff claims that, after deducting $10,000, its agreed nonchecking deposit, the bank held the remainder of $72,819.40 in trust, and that it is entitled to a preference in that amount over all the other depositors, and general creditors of the bank in its liquidation.

The plaintiff contends its contract with the bank was one of agency and at no time did it or its receiver have title to any sums intrusted to the bank for collection. The admitted facts show the assets in the hands of the receiver were augmented to some extent by reason of outright deposits of the plaintiff or sums received as collections for it, and I shall first determine the true relationship between the plaintiff and the bank.

Ordinarily the business of banking relates to dealing in money by receiving deposits, making loans, discounting commercial paper, making collections, and issuing bills and notes. It is well recognized in the conduct of the business that, when a check or other commercial paper is deposited in a bank indorsed for collection or where there is a definite understanding that such is the purpose of the parties at the time of deposit, there is no question that the title to the paper remains in the depositor. Deposits for collection in a bank do not ordinarily give rise to the relation of debtor and creditor, the bank merely acting as an agent for the purpose of collection.

The plaintiff and the National Bank of Kentucky intended that the bank should act for it as a collecting agency for all sums intrusted in excess of $10,000. In a letter dated February 26, 1919, the plaintiff wrote the bank as follows: "Regarding the matter of the existing arrangement relative to collection of items in your territory for our account, remittance against which you have been in the habit of making on Saturday of each week, we find that under the existing conditions in the raw sugar market that we are just now frequently called upon for quite large sums of money both for the purpose of making settlements for the sugar and for customs duty, and it occurs to us that it would be of some service if you could arrange to make remittance of all items collected by you for our account twice a week instead of once, say at the close of business on Tuesday and Friday * * *"; and in reply on February 28, 1919, the bank said: "* * * In order that we might give you prompt returns on the items, it has been the custom for the checks to be entered for collection, and forwarded direct to their destination for remittance to us, which was then credited to your account * * *. The head of our collection department states that over a period of five years, there has not been one of your checks, sent us for collection, returned unpaid, which prompts us to offer the following suggestion: Instruct us to credit your account on date of receipt, of all checks, at which time, advice will be mailed, and allow us to route in the most economical way. The funds to your credit in excess of $10,000, being subject to your check, at all times, and in the event, that one of the items should be returned unpaid, we could either charge to your account, and return to you, or else hold it unpaid, for your instructions. To us, this would be a very desirable arrangement, but if it does not appeal to you, we would be glad to hear from you further, and certainly will make every effort to meet your views."

In response to this letter, the plaintiff, on March 4, 1919, wrote the bank as follows:

"We can see no objection to the plan outlined in your letter except as to holding the balance over $10,000.00 subject to check; we would prefer you to make remittance.

"As we understand it, with this amendment, the arrangement would be as follows:

"You to credit our account, at par, on date of receipt of all items forwarded to you (it being, of course, understood that we are to stand behind any check sent you for collection, and in the event of its non-payment for you to charge it back to us under the customary advice, when the amount involved could be deducted from your next remittance to us), acknowledgment of such receipt to be continued as is presently the case, i. e., returning to us the carbon copy of our remittance sheet with your acknowledgment thereon, our cashier being required to have a full record; you to use your own best judgment as to the route of collection; remittances to be made to us semi-weekly—say on Tuesdays and Fridays, of all amounts to our credit over and above $10,000.00, which amount is to remain as a standing balance, as is the case at present. * * *"

The arrangement outlined in the last letter was strictly followed by each of the parties and remittances were made twice weekly by the bank. All sums credited to the plaintiff on the books of the bank were remitted by New York draft regardless of collection. The plaintiff sent no collections to the bank after November 15, 1930, and received credit on its books for all checks or items sent prior to that time.

Under the method of doing business between the parties, the plaintiff could have drawn a check on the National Bank of Kentucky for the entire sum credited to it in excess of $10,000 on November 15, 1930.

The bank in its letter of February 28, 1919, stated to the plaintiff that all sums to its credit in excess of $10,000 were subject to check. However, the plaintiff wrote the bank that it would not check on the deposit but desired the bank to make the remittance twice a week in New York Exchange.

The plaintiff did not make a special deposit in the bank, and there is nothing in the facts to differentiate it from the case of commercial paper transmitted in the ordinary course of business from one bank to another for collection, and it is beyond question that the bank commingled the proceeds with that of the other depositors. The relationship between the plaintiff and the bank was one of trust in the ordinary sense of the word, and so was the relationship between the bank and its other depositors.

The court is called on to weigh the relative rights between the differing trusts and whether the legal sense of the case compels it to take from one group of depositors and give to another. The material business

58

of banking is transferring credits from one person to another, and to make a legal distinction between those who deposit checks in a bank for collection and credit without restriction and an indefinite time as to withdrawal, and those who deposit for collection and credit with restricted time for payment, is difficult.

■ In the absence of any general agreement, it is the custom of banks to credit depositors with the proceeds of paper left for collection, and this is so well understood that customers of banks are presumed to contract in view of this universal usage and the relationship of agency between the collecting bank and the customer usually terminates when unrestricted right is given by the bank to the customer to draw on it for collected funds.

In the case at bar, inconsistent facts appear to plague the legal reason; credit was given to the plaintiff on the books of the bank on receipt of the items for collection. If nothing else appeared, the plaintiff would be the ordinary depositor, but the parties called the contract one for collection, and the bank was to remit twice weekly the total sum credited to the plaintiff, less $10,000. This method differs from that of the ordinary depositor and delay in remittance is unusual for collections.

The cases establishing legal rules to be followed in determining the relationship between the owner of paper sent to a bank for collection are numerous and various, many of them extremely unsatisfactory and apparently without substantial reason. Some hold the court must read the minds of the parties and arrive at their intentions, which projects me into the field of psychology and is difficult of application. Some say it is to be determined on whether the collected funds have been mingled with the other funds of the bank. If this is correct, no trust would ever arise under modern banking. The banks do not put money deposited by customers into packages and label them with the customers' names.

Some courts hold the true test to be whether or not the customer can trace his property in the possession of the receiver by more or less arbitrary rules. This rule is unworkable because the customer delivering the paper to the bank for collection has no way to supervise or direct how the bank shall keep the collected funds until he has been paid.

Other cases hold the test to be whether or not the relationship of principal and agent has ceased. This requires the court to find the end of the rule at the beginning.

■ When the proceeds of the collected items may be used by the bank before remittance for any length of time as its own, or the customer has the right to withdraw from the bank any part of the funds sent for collection before the bank has in fact made it, I believe the rule should be that the relationship of principal and agent is absent and that of debtor and creditor present.

■ In the case at bar, the National Bank of Kentucky credited to the plaintiff at par the sight drafts sent it for collection on the day of their receipt, and for a short time it had the right to use the proceeds of the collections in the same manner as that of other depositors and the plaintiff had the unrestricted right to withdraw the funds twice a week in excess of $10,000, and the bank remitted, out of its own funds, if the collection had not been made. The extreme legal difficulty of finding a trust basis for the determination of the status of collected funds by a bank is persuasive that courts should exercise great care in establishing priorities between persons doing business on substantially the same basis, although details may vary, as in the case at bar.

The cases are weighty in number and reason that the relationship of debtor and creditor arises after collections have been actually made. This conclusion is based on the custom of banks to credit collections on their books to forwarding customers and remit in the bank's usual exchange. This rule would wipe out all of plaintiff's claim for $51,001.06, and when the further rule is applied that, if unrestricted credit is given immediately on receipt of a sight draft for collection the relationship of debtor and creditor exists, the plaintiff's claim to the $24,367.65 also fails. The latter rule is not supported by so weighty authority as the first, but is of legal respectability.

The plaintiff strongly relies on the case of Commercial Bank of Pennsylvania v. Armstrong, 148 U.S. 50, 60, 13 S.Ct. 533, 37 L.Ed. 363. In that case, the Commercial Bank agreed with the National Bank of Cincinnati that it would collect credit items for the Pennsylvania Bank and remit all sums collected at par on the 1st, 11th, and 21st days of each month. The Commercial

Bank indorsed the obligations to the Cincinnati Bank "for collection." The Cincinnati Bank failed with some of the collection items in its possession unsatisfied, and with proceeds of others collected. The Commercial Bank sought to enforce a trust on the traceable proceeds of collections before the failure of the bank and that uncollected at the time the bank closed.

The Supreme Court sustained the trust as to collections made subsequent to the failure of the bank, but disallowed it as to those made prior thereto.

There is a controlling difference between the facts in the cited case and the one at bar. The Cincinnati Bank did not remit until it had the proceeds of the collections in its hands and settlement was made either in currency or by New York draft at the direction of the Commercial Bank.

In the case here the time and amount of payment did not coincide with the collections, and settlement was made twice weekly on credit balances. Under the terms of the agreement the National Bank of Kentucky used its own funds in settlement when collections did not equal the credit balance due the plaintiff.

It is a fair inference that in many instances the plaintiff received remittances from the bank for collections before being made. An illustration of this is found in the $1,450.69 which the plaintiff insists was collected by the receiver. The uncontradicted evidence shows this sum was included in one of the protested drafts.

It could hardly be said that the relationship of agency existed when the bank was remitting to the plaintiff sums in advance of collection. Such a practice is clearly within the principle of creditor and debtor.

The plaintiff also relies on the case of Richardson v. Louisville Banking Company (C.C.A.) 94 F. 442. In that case the American National Bank agreed with the Louisville National Banking Company to "take" all collection items in five Southern States crediting the Louisville Bank on receipt at par, remitting New York, the Louisville Bank to keep a balance of $10,000 at all times during the contract.

The American National Bank became insolvent and the receiver took possession. It had on hand various items in remittances of recent date, all of which had been credited on its books to the credit of the Louisville Banking Company, but not collected,

and also a collected balance. The receiver collected many of these items, and the Louisville Banking Company sued the receiver, claiming that all amounts collected at the time of receivership constituted a trust fund. The court adjudged the uncollected amount a trust and the bank a general creditor as to the amount collected before insolvency.

The receiver contended the American National Bank purchased each item remitted by the Louisville Banking Company and that, as the property belonged to it, by purchase, the relation between the banks was solely that of debtor and creditor. There was no contention made, as here, that the relationship of principal and agent existed, and the court was not asked and did not pass on that question. The facts in the cited case are quite similar to the one at bar, and the same principle of law should be applicable. However, the law on which the case here is decided was not presented to the court in the Richardson Case.

In the case of St. Louis & San Francisco Railway Company v. Johnston, 133 U.S. 566, 578, 10 S.Ct. 390, 392, 33 L.Ed. 683, cited by the plaintiff, the railway company had an account with the Marine National Bank of New York. It drew a sight draft on the Atchison, Topeka & Santa Fé Railroad Company of Boston, payable to the order of the Marine Bank for $17,835, an amount due from the latter company, and sent it to the Marine Bank with a deposit ticket filled up in the usual way. The messenger who took the draft and deposit ticket to the bank had no special instructions and gave it to an assistant teller. The company's passbook was not presented with the draft and deposit and no entry made until several days afterward. The draft was entered as cash and was sent to Boston for collection and collected there. Before collection the bank in New York, which was insolvent when the transaction took place, suspended and was placed in the hands of a receiver.

The railway company sought to collect the proceeds of the draft from the receiver of the New York bank on the ground that the bank was hopelessly insolvent at the time it received the draft for collection. The collection was made by the receiver after the bank closed, and, in a suit against him, he insisted at the time the draft was entered at the bank for collection and credit given to the depositor title to it and the resulting proceeds of collection passed to the

bank. The court held the title did not pass, that there was nothing in the facts to show that the bank intended to extend credit to the depositor, and pointed out that it was unlike a deposited check. It was further stated in the opinion: "The draft was entered at its full value, which indicated that it was not discounted, but credited for convenience, and in anticipation of its payment."

The facts in the cited case differ in important essentials from the one at bar. The court stated in its opinion the principle of law applicable here: " 'Every man who pays bills not then due into the hands of his banker,' said Lord Ellenborough in Giles v. Perkins, 9 East, 11 [12] 14, 'places them there as in the hands of his agent, to obtain payment of them when due. If the banker discount the bill, or advance money upon the credit of it, that alters the case. He then acquires the entire property in it, or has a lien on it pro tanto for his advance.' "

The plaintiff also depends on Holder v. Western German Bank (C.C.A.) 136 F. 90, 92, as sustaining its position. In that case the plaintiff deposited with the German Bank a check drawn on the Commercial Bank of Jacksonville, Fla. The check was marked "for deposit," and was credited to the plaintiff on the books of the bank, subject to the conditions printed on the deposit ticket, which in substance provided that the bank accepted the check for collection and as agent for the plaintiff, and further that credit was given conditioned on the check being paid. The German Bank forwarded the check to the First National at Jacksonville for collection, and in the forwarding letter the Florida bank was instructed to collect and remit in New York Exchange. The First National collected the check from the Commercial Bank and mailed to the German Bank its draft on the Chemical National Bank of New York. Before the draft could be collected in the ordinary course of business, the First National failed and was placed in the hands of a receiver.

The plaintiff sued the German Bank as his agent for a breach of duty, claiming the agency contract was violated when the German Bank directed the First National to remit in New York Exchange and that the German Bank became a debtor to him instead of a trustee.

The court denied any relief to the plaintiff and based its decision on the fact that the Florida bank was acting as an agent and held the proceeds in trust and said: "When it sent its own draft as the remittance, it did not operate as a satisfaction of its obligation, unless the draft should be paid, there being no agreement to receive the draft as payment. This would be so in the case of a common debt. And certainly the reasons for the same rule are not less where an agent transmits to his principal his own note or draft to provide means for the satisfaction of a trust obligation on account of funds received for his principal. The facts show that the draft of the Florida bank was uncollectible, that the payment of it was forbidden by the the receiver, the party upon whom the right of the bank had been devolved. The trust relation between the plaintiff and the Florida bank was not discharged by such a remittance, and the collection went into the hands of the receiver subject to the trust. If the remittance of the draft were to be regarded as provisional payment, the result would be that, in case the draft should not be paid, the parties would be remitted to their former position. In such a case there would be no sound reason, as we think, for holding that the debt had lost its privileged character by a proceeding of the party owing it, unless the party to whom the debt is owing expressly assents to the change of relation between himself and his agent."

The cited case is inapplicable here because the facts show that the plaintiff had not consented to the Florida bank using the proceeds of the check as its own, and the right of the plaintiff to withdraw funds from the German Bank against the deposited check was under the express agreement as set out in the deposit memorandum that the German Bank only accepted it for the purpose of collection and as the plaintiff's agent.

The other cases cited and relied on by the plaintiff are clearly distinguishable, and not applicable to any question for consideration here.

The Bank Collection Code (Carroll's Kentucky Statutes, 1936 Edition, §§ 3720b-69a to and including 3720b-69a-12) is not applicable to the relationship between the National Bank of Kentucky and the plaintiff. As we have heretofore pointed out,

the relationship of principal and agent did not exist between the plaintiff and the bank. See Douglas v. Federal Reserve Bank, 271 U.S. 489, 494, 46 S.Ct. 554, 556, 70 L.Ed. 1051.

The conclusion I have reached makes it unnecessary to determine how much the assets in the hands of the receiver were augmented.

The plaintiff's petition will be dismissed.