## HOLDER v. WESTERN GERMAN BANK.

### (Circuit Court of Appeals, Sixth Circuit. February 15, 1905.)

### No. 1,343.

1. BANKS—COLLECTIONS—REMITTANCE—CUSTOM—INSTRUCTIONS.

The instruction of a bank, in sending to one bank for collection a check on another bank, "Remit New York exchange," authorizes the remittance only in accordance with custom, be that the sending of a draft drawn on a New York bank by the bank to which the check was sent, or a draft drawn by another.

2. SAME—TRUST RELATION.

Plaintiff deposited a check with defendant bank for collection as plaintiff's agent. Defendant forwarded it to the F. bank for collection, with the instruction, "Remit New York exchange." The F. bank remitted the proceeds of the collection by its own draft on a New York bank, which the New York bank, at direction of the receiver of the F. bank, who in the meantime had been appointed, refused to pay. *Held*, that the F. bank was liable as trustee for the money collected, there being no authorization by defendant that its relation should be changed to that of debtor, so that defendant was not liable.

[Ed. Note.—For cases in point, see vol. 6, Cent. Dig. Banks and Banking, § 575.]

In Error to the Circuit Court of the United States for the Southern District of Ohio.

For opinion below, see 132 Fed. 187.

Albert Bettinger, for plaintiff in error.

H. D. Peck, Frank H. Shaffer, and J. W. Peck, for defendant in error.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

SEVERENS, Circuit Judge. This was an action prosecuted by the plaintiff in error to recover from the Western German Bank the sum of $4,000, being the amount of a check deposited with it for collection, and interest from March 13, 1903. The case was tried before the court without a jury. The following statement of the material facts as found by the court, and, as we think, fairly exhibited in the brief for plaintiff in error, is sufficient for the purposes of our decision:

"On the 10th day of March, 1903, the plaintiff, being the holder of a check for $4,000, drawn upon the Commercial Bank of Jacksonville, in the state of Florida, indorsed the same, 'For deposit,' and caused said check to be deposited for collection in the Western German Bank of Cincinnati, Ohio, where he was a regular depositor. Said check was received and credited subject to the conditions printed on the deposit ticket, delivered to defendant with the deposit, and in plaintiff's book in which the deposit was entered, to the effect that the Western German Bank received said check for collection only as the agent of the plaintiff, and that credit for the same would be given subject to its payment; that the bank would observe due diligence in the selection of banks or agents for the collection of the check, but should not be responsible for the failure or negligence of said banks or agents; and, further, that said check was received, credited, and forwarded at depositor's risk only until satisfactory returns should be received for the same.

"On the same day that the check was deposited, viz., March 10, 1903, the officers of the Western German Bank duly forwarded said check to the First National Bank of Florida, at Jacksonville, in said state, for collection, ac-

companied by a letter wherein said bank was instructed to collect and return the proceeds of said check, with the further request to said First National Bank of Florida, 'Please remit New York exchange.' The First National Bank at Jacksonville, on the 13th day of March, 1903, received payment of the same, and on the same day forwarded to the Western German Bank of Cincinnati, by mail, a draft of said National Bank of Florida upon the Chemical National Bank of New York for $3,995, the amount of said check less $5 exchange or collection charges. This draft was received by the Western German Bank at the opening of business on Monday, March 16, 1903, and on the same day the First National Bank of Florida, before it could open its doors for business, was taken possession of by a receiver acting under orders of the Comptroller of the Currency, and was and is insolvent, and is now being wound up by the receiver so appointed.

"On the same day the draft was so received from the First National Bank of Florida, and before the close of business hours, defendant was first informed of the insolvency of the First National Bank of Florida, and of the fact of its having been taken possession of by a receiver. The Western German Bank forthwith forwarded the draft to New York for collection, but the Chemical National Bank, upon which the draft was drawn, acting under orders from the receiver of the First National Bank of Florida, refused payment of the draft, and, although defendant afterwards demanded payment from the receiver, and made all reasonable efforts to collect said draft, the same remains wholly unpaid.

"The court further finds that it is, and was at the time of the receipt of this check by defendant for collection, a general and uniform custom among banks and bankers of the United States to remit, in the absence of instructions to the contrary, the proceeds of checks, drafts, notes, and other instruments sent to them for collection by means of drafts or bills of exchange drawn upon banks located in the larger cities of the country, and that a great majority, probably three-fourths, of all remittances, are made by means of drafts upon banks located in the city of New York."

The court's conclusion of law upon these facts was:

"That the Western German Bank, in requesting said First National Bank to remit in New York exchange, did not exceed its powers as agent, or act outside the terms of its agency for the plaintiff, and did not thereby change its relation to the plaintiff or to the First National Bank of Florida, and is therefore not liable to plaintiff upon the cause of action set forth in the petition, and is entitled to recover from plaintiff its costs."

The plaintiff contends that the defendant, in giving the direction to the First National Bank of Florida, "Please remit New York exchange," authorized the collecting bank to remit the collection in its own draft on a New York bank, and thereby change its relation to the defendant from that of a trustee to that of a debtor, whereby the claim for the collection made by the Florida bank lost its priority in the distribution of the assets of the latter on its going into liquidation. By the conditions of the plaintiff's deposit of the check with the defendant for collection, the defendant became his agent for the purpose of sending it forward to some other bank or collecting medium, which, in proceeding with the collection, would become, as between the plaintiff and the defendant, the agent of the plaintiff. The defendant contends that there is a custom among bankers whereby the collecting bank remits its collections in New York exchange, and the finding of the court is that this custom is uniform, in the absence of instructions to the contrary. But the finding does not state whether this custom is that the collecting bank remits exchange by means of drafts of other banks on New York banks, or whether the custom permits the remittance to be

made in the collecting bank's own drafts also. But we do not think it material. The direction of the defendant to the Florida bank should be read in the light of the custom, and meant no more than that which the custom sanctioned.

But other considerations lead more directly to the determination of the controversy. The Florida bank was an agent in making the collection. When it had made the collection, it held it in trust. If it mingled it with its own funds, the trust attached pro tanto to the funds. National Bank v. Insurance Co., 104 U. S. 54, 26 L. Ed. 693, where the principle vindicated in Knatchbull v. Hallett, 13 Ch. Div. 696, by Sir George Jessel, M. R., is fully confirmed. When it sent its own draft as the remittance, it did not operate as a satisfaction of its obligation, unless the draft should be paid, there being no agreement to receive the draft as payment. This would be so in the case of a common debt. And certainly the reasons for the same rule are not less where an agent transmits to his principal his own note or draft to provide means for the satisfaction of a trust obligation on account of funds received for his principal. The facts show that the draft of the Florida bank was uncollectible, that the payment of it was forbidden by the receiver, the party upon whom the right of the bank had been devolved. The trust relation between the plaintiff and the Florida bank was not discharged by such a remittance, and the collection went into the hands of the receiver subject to the trust. If the remittance of the draft were to be regarded as provisional payment, the result would be that, in case the draft should not be paid, the parties would be remitted to their former position. In such a case there would be no sound reason, as we think, for holding that the debt had lost its privileged character by a proceeding of the party owing it, unless the party to whom the debt is owing expressly assents to the change of relation between himself and his agent. The bank could not rid itself of that relation and become the mere debtor of the plaintiff by its own act. The trust was part of the plaintiff's security. Neither the plaintiff nor the Western German Bank, in his behalf, ever consented that the Florida bank should cast off the trust and become the plaintiff's debtor. It would be a most absurd consequence if a man in the possession, as an agent, of a fund belonging to another, could convert the fund into his own property by sending his check to the owner, and then, upon some change in his own circumstances, direct his bank not to pay it, and so transform himself into a debtor. Of course, if the owner consents to such a change of relationship between himself and his agent, or where the circumstances indicate that a credit in account is expected, which is the same thing, the result is different, because the destination of the fund is altered by agreement. But here there was no such agreement. The check was sent for collection and remittance. Satisfactory proof should be required that the owner assented to such change, in view of the consequences which would ensue. A man might be quite willing to trust another with the collection of his money when he would be very unwilling to loan it to him. It would seriously impair the facilities for collecting commercial paper if it should be exposed to the hazards of conversion by the agent into whose hands the proceeds might come.

By agreement of the plaintiff and defendant, the Florida bank became the plaintiff's agent, and the defendant is not responsible to the plaintiff for the failure of its agent to fulfill the obligations of his trust, and we think the plaintiff's remedies have not been impaired by any fault of the defendant.

If the remittance were by drafts of other parties, it may be that the presence of other considerations would require a different conclusion. But the custom referred to, if it gave the collecting bank the power to thus change the character of its obligations to its principal, would be palpably inconsistent with settled rules of law. But when interpreted in harmony with such rules, probably it would be unobjectionable.

We have stated the relations of the collecting bank, and its obligation, upon the assumption that the relations were with, and its obligation to, the owner of the check. But if upon the form of a general indorsement, without more, the Western German Bank appeared to be the owner, and the relations of the Florida bank were therefore, in technical law, with the former, the result would not be different, for all that has been said of the nature of the Florida bank's obligations would be equally applicable, and all the advantages of the right of the Western German Bank would inure to the plaintiff.

The prime reason which supports the judgment of the Circuit Court is that the injury suffered by the plaintiff consists in the failure of his agent, the Florida bank, to discharge its duty to transmit the trust fund to the Western German Bank, for which failure the latter is not responsible.

The direction to remit in New York exchange did not authorize the remittance of the collecting bank's own draft, which, being valueless, would not effect the purpose of a remittance.

The judgment is affirmed, with costs.