## ANADARKO COTTON OIL CO v. LITTEER.

(District Court, E. D. Oklahoma. July 8, 1924.)

No. 3950.

*(Syllabus by the Court.)*

1. **Banks and banking ☞80(7)—One claiming trust fund against insolvent bank must trace it into hands of receiver.**

   A person, claiming a trust fund against an insolvent bank, must trace it into the hands of the receiver, and if the evidence show that the trust funds have been dissipated, even in paying debts of the failing bank prior to the receivership, there can be no preference in the funds coming into the hands of the receiver.

2. **Banks and banking ☞80(7)—Trust funds held not to have gone into hands of receiver.**

   Plaintiff drew a draft on B., a depositor in S. Bank. B. did not have funds on hand with S. Bank sufficient to pay the draft, and deposited with said bank a draft on Buffalo, N. Y., for the amount of plaintiff's draft, and gave a check on his deposit, for which he received a cashier's check from S. Bank, which he forwarded to plaintiff. S. Bank sent the Buffalo draft to its Kansas City correspondent, and by various drafts dissipated its credit which it thus obtained with its correspondent. None of the funds so deposited with the Kansas City bank came back to the S. Bank. Prior to going into the hands of a receiver, S. Bank was overdrawn with its Kansas City correspondent. *Held,* that none of the trust funds came into the hands of the receiver, and plaintiff is not entitled to a preference in the funds in the hands of the receiver on failure of S. Bank.

At Law. Action by the Anadarko Cotton Oil Company against Earl J. Litteer, receiver of the State National Bank of Ardmore, to establish a preference in favor of plaintiff in the funds of the bank. Judgment for defendant.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Bond, Melton & Melton, of Chickasha, Okl., and Cruce & Potter, of Ardmore, Okl., for plaintiff.

Johnson & McGill, of Ardmore, Okl., for defendant.

KENNAMER, District Judge. On February 17, 1922, the State National Bank of Ardmore, Okl., received a draft drawn by plaintiff on E. C. Burton for the sum of $13,200. At this time Burton had on deposit in the bank $284.77. On the same date Burton drew a draft, with certain corporation stock attached, on Jacob L. Smith, of Buffalo, N. Y., for $13,200, and deposited this draft in the State National Bank, as a cash item, and for which the bank gave him credit on his account. At the same time Burton gave to the State National Bank a check on his account in said bank for the amount of the draft drawn by plaintiff.

The bank sent the draft drawn on Buffalo, N. Y., to its correspondent, the Commerce Trust Company of Kansas City, together with other remittances, amounting in all to $15,819. At that time the State National Bank had a balance of $598.42 with the Commerce Trust Company. On February 17th the State National Bank drew drafts on the Commerce Trust Company for $4,000, leaving a balance with the Commerce Trust Company of $12,417.88. On February 20th the State National Bank drew from the Commerce Trust Company $14,039.35, leaving the State National Bank overdrawn with the Commerce Trust Company in the sum of $1,621.47. Among the drafts drawn on the Commerce Trust Company by the State National Bank of February 20th was one in favor of the First National Bank of Fort Worth, which went to pay part of an overdraft which the State National then had with the Fort Worth bank, amounting to over $15,000. There were other debits and credits on later dates between the State National Bank and the Commerce Trust Company and the First National Bank of Fort Worth, which, in view of the conclusions reached in the case, are unnecessary to detail.

The State National Bank closed its doors at the close of business February 24, 1922, at which time it had a balance to its credit with the Commerce Trust Company of about $900, and a balance with the Fort Worth bank of $1,868.85. This balance with the Fort Worth bank was applied on indebtedness owing to it by the State National Bank, amounting to over $30,000.

[1] Plaintiff's right to a preference in the funds in the hands of the receiver rests upon the theory that the funds in the hands of the receiver are trust funds, not belonging to the general assets of the bank, and it is incumbent upon the plaintiff to trace such trust funds into the hands of the receiver. I think the plaintiff has failed to sustain the burden of proof in this respect. The proceeds of the draft drawn on Buffalo, N. Y., did not at any time come into the possession of the State National Bank, and were not among its funds on hand when it went into the hands of the receiver. The draft drawn on Buffalo, N. Y., was sent to the Commerce Trust Company, and the proceeds used in paying other drafts drawn by the State National Bank, and particularly one drawn in favor of the Fort Worth bank for

$11,000. None of the funds at any time found their way back to the State National Bank of Ardmore. In fact, on February 20th, three days after plaintiff's draft arrived at the State National Bank, and after the Buffalo draft had been sent to the Commerce Trust Company, and four days before the State National Bank closed its doors, the State National Bank was overdrawn with the Commerce Trust Company in the amount of $1,621.47. At that time, then, the trust funds, if the same ever existed, had been dissipated in paying debts of the State National Bank, and none of same had come into the possession of the Ardmore bank.

[2] Under this state of facts, I know of no rule of law which would give to the plaintiff a preference in the funds in the hands of the receiver, and the authorities cited by counsel for plaintiff do not appear to support a right of recovery. It appears to me the rule is well established that the person claiming a trust fund must trace it into the hands of the receiver, and that, if the evidence shows that the trust funds have been dissipated, even in paying debts of the failing bank, prior to the receivership, there can be no preference in the funds coming into the hands of the receiver.

In Macy v. Roedenbeck, 227 Fed. 346, 142 C. C. A. 42, L. R. A. 1916C, 12, a case relied upon by plaintiff, the court clearly holds against plaintiff's contention. The Circuit Court of Appeals there says:

"* * * And that if he [the trustee] destroyed the trust fund by dissipating it altogether, there remains nothing to be the subject of the trust; that only so long as the trust property can be traced and followed into other property into which it has been converted does it remain subject to the trust."

The court then quotes with approval from an opinion by Judge Adams, formerly District Judge for the Eastern District of Missouri, as follows:

"There is another line of authority announcing the proposition that because a trust fund, when appropriated by a trustee to his own use, swells his assets, the general estate of the trustee, when insolvency supervenes, will be impressed with a trust for the reimbursement of the cestui que trust, on the ground that such an estate has been benefited to an equal amount by the trustee's breach of duty. But this rule, as I understand it, has not received the sanction of any federal court, and of but few state courts."

I think that, under the facts as established in this case by the evidence, this case is clearly controlled by the decision in American Can Company v. Williams, 101 C. C. A. 634, 178 Fed. 420. In that case the insolvent bank had received certain drafts for collection, part of which were paid and the proceeds received by the bank. Other drafts were sent to a correspondent bank and there credited to the insolvent bank. In discussing this state of facts, the court quotes with approval the following from the opinion in Commissioners v. Strawn, 157 Fed. 49, 84 C. C. A. 553, 15 L. R. A. (N. S.) 1100:

"It is therefore a part of the rule applicable to following misappropriated moneys into a bank account that, if at any time during currency of the mingled account the drawings out had left a balance less than the trust money, the trust money must be regarded as dissipated, except as to this balance, the

sum subsequently added to the account from other sources not being attributed to the trust fund."

The Circuit Court of Appeals says:

"But while these items obtained by the receiver directly from outside banks are readily followed, the situation with respect to the other classes of drafts is very different. Some of these drafts were used to pay debts of the Fredonia Bank, and, no matter how wrongful the misappropriation may have been, it is not apparent that any trust fund came ino the hands of the bank through the transactions."

That is the case here. The proceeds of the draft on Buffalo, N. Y., had been dissipated on February 20th by paying debts which the State National Bank owed to the Commerce Trust Company and to the First National Bank of Fort Worth, and when the receiver took charge of the bank on February 25th none of the trust funds came into his possession.

In view of the conclusion herein reached, judgment is entered in favor of the defendant.