### LARABEE FLOUR MILLS v. FIRST NAT. BANK OF HENRYETTA, OKL., et al.

### FARMERS' NAT. BANK OF BURLINGTON, KAN., et al. v. KANSAS FLOUR MILLS CO.

.(Circuit Court of Appeals, Eighth Circuit. June 12, 1926.)

Nos. 7090, 7205.

1. Courts ⬉294—Suit against national bank and receiver on account of draft sent it for collection held one for winding up its affairs, and so within jurisdiction of District Court (Judicial Code, § 24, subd. 16).

Suit against national bank and receiver on account of draft sent it for collection is one for winding up its affairs, and so, under Judicial Code, § 24, subd. 16 (Comp. St. § 991), within jurisdiction of District Court, regardless of amount involved.

2. Banks and banking ⬉156.

Banks, in the matter of collection of drafts, act as agents.

3. Banks and banking ⬉80(8)—Drawer held not entitled to preference, on failure of bank to which draft was sent for collection, it having been taken up by check on it.

Draft sent to bank for collection having been taken up by drawee, depositor in the bank, by his check on it, so that no additional funds were brought into it, but there was a mere shifting of credits on its books, drawer was not entitled to preference, on failure of bank before making payment on account of collection.

Faris, District Judge, dissenting.

Appeal from the District Court of the United States. for the Eastern District of Oklahoma; Robert L. Williams, Judge.

Appeal from the District Court of the United States for the District of Kansas; John C. Pollock, Judge.

, Two suits, one by the Larabee Flour Mills against the First National Bank of Henryetta, Okl., and its receiver and the other by the Kansas Flour Mills Company against the Farmers' National Bank of Bur-

lington, Kan., and its receiver. From a decree for defendants in the first suit, plaintiff appeals; and from decree for plaintiff in the second suit, defendants appeal. Reversed, with instructions.

T. A. Noftzger, of Wichita, Kan., R. M. Mountcastle, of Muskogee, Okl., and Charles B. McCrory and Dudley C. Monk, both of Okmulgee, Okl., for appellant Larabee Flour Mills.

Roscoe W. Graves, of Burlington, Kan., and O. T. Atherton, of Emporia, Kan., for appellants Farmers' Nat. Bank of Burlington, Kan., and another.

R. B. F. Hummer, of Henryetta, Okl., for appellees First Nat. Bank of Henryetta, Okl., and another.

Charles B. McCrory and Dudley C. Monk, both of Okmulgee, Okl., and T. A. Noftzger, George W. Cox, W. J. Masemore, and R. L. NeSmith, all of Wichita, Kan., for appellee Kansas Flour Mills Co.

Before LEWIS, Circuit Judge, and FARIS and PHILLIPS, District Judges.

LEWIS, Circuit Judge. These two cases present the same issue and there is no difference in them on the controlling facts. In each a preference claim over other creditors of an insolvent national bank is sought. It was denied in Case No. 7090 and allowed in No. 7205. The appeals may be conveniently disposed of in one opinion.

[1] These are cases for winding up the affairs of national banks, and there can be no doubt of jurisdiction in the district courts, regardless of the amounts involved. Judicial Code, § 24, par. 16 (Comp. St. § 991); Guaranty Co. of North Dakota v. Hanway, 104 F. 369, 44 C. C. A. 312; International Trust Co. v. Weeks, 203 U. S. 364, 366, 27 S. Ct. 69, 51 L. Ed. 224.

In Case No. 7090 these are the facts: The Larabee Flour Mills drew a draft on Eubank Produce Company, of Henryetta, Oklahoma, for $944.91, and caused it to be sent by the Commerce Trust Company of Kansas City, Missouri, to the First National Bank of Henryetta, Oklahoma, for collection and remittance of proceeds to the Trust Company. The Henryetta Bank presented the draft on July 20, 1923, to the Produce Company for payment and the Produce Company gave its check on the Henryetta Bank in payment of the draft. The Produce Company, at the time it gave the check, had a credit with the Bank as a depositor for more than sufficient to pay its check. The Bank accepted the check in payment of the

draft, charged the amount thereof to the account of the Produce Company and on the same day mailed its draft on the First National Bank of Okmulgee, Oklahoma, to the Commerce Trust Company for the $944.91, payable to the Trust Company. On that same day, July 20, 1923, the Henryetta Bank was closed by the Comptroller of the Currency and since then it has been under the control of appellee Hulse as receiver appointed by the Comptroller. The draft for $944.91, drawn on the First National Bank of Okmulgee, was presented to that bank for payment on July 26, 1923, payment was refused and that draft remains unpaid. The appellant thereupon sued the Henryetta Bank and its receiver. On these facts, alleged in the complaint and admitted by the answer, Larabee Flour Mills asked that it be given a preference over and above the common claims of other creditors in payment out of the assets of the Henryetta Bank in the hands of the receiver. The court denied the preference and dismissed the suit.

In No. 7205 these are the facts: The Kansas Flour Mills Company shipped a car of flour and feed to D. O. Gifford, of Burlington, Kansas, and drew a draft therefor in the sum of $690.66 on Gifford, endorsed the draft, attached it to the bill of lading and handed it to the American State Bank of Great Bend, Kansas, to be forwarded for collection. It forwarded the draft with the bill of lading to the Farmers' National Bank of Burlington, Kansas, for collection and remittance, and Gifford, on being notified took up the draft on May 9, 1924, with his check on the Burlington Bank, drawn in its favor, for the sum of $690.66. The Burlington Bank on receipt of Gifford's check surrendered the bill of lading to him and charged his account with the amount of his check. At that time Gifford had a credit with the Burlington Bank as a depositor for more than sufficient to pay his check. On the next day the Burlington Bank drew its draft on the Commerce Trust Company of Kansas City for the sum of $689.66, payable to the American State Bank of Great Bend, as the proceeds less its collection charges of the draft on Gifford, and mailed it to the American State Bank at Great Bend. Before that draft could be presented in due course to the Commerce Trust Company for payment the Burlington Bank ceased business and was taken in charge by the Comptroller of the Currency, and has since been in charge of appellee Dudley as receiver appointed by the Comptroller. The draft on the Commerce Trust Company remains un-

paid. Kansas Flour Mills Company brought this suit against the Burlington Bank and Dudley, its receiver, asking that it be given a preference over and above the common claims of other creditors in payment out of the assets of the Burlington Bank in the hands of the receiver. The court allowed the preference.

[2, 3] The real issue in each case is between the preference claimant and general creditors of the bank. They will get less if the preference is allowed. Each claimant asserted an equity, that the assets taken over by the Comptroller are trust funds in which it is a preferred beneficiary. It is difficult to explain or understand by what equitable right one who has not contributed to the creation of a fund should be given a special and superior interest therein, though some of the state courts seem to so hold. The collecting banks acted as agents, Commercial Bank v. Armstrong, 148 U. S. 50, 13 S. Ct. 533, 37 L. Ed. 363, and had they collected and retained the funds called for by the drafts, as was their duty on account of insolvency, the equities of claimants would be plain; but instead of doing so they merely shifted credits on their books and records. No part of the funds in the banks when they failed was placed there by claimants or by any one for them. In each case the draft was paid by check on the insolvent. No additional funds were brought into the bank by either transaction. If the drafts which they held for collection had been paid in currency or by check on some other bank, the insolvents' assets would have been increased that much when thereafter their remittance drafts were dishonored; and in that event equity would have regarded the collections as trust funds, followed them into the increased assets and, to the extent of the increase applied them first in discharge of these claims. This is our conception of the rule and the reason for it, applied in the federal courts. It has been repeatedly announced by this court. In the course of the opinion of this court in Beard v. Independent Dist. of Pella City, 88 F. 375, 31 C. C. A. 562, which presented the same issue we have here, on like controlling facts, it is said:

"Unless it appears that the fund or estate coming into possession of the receiver has been augmented or benefited by the wrongful use of the trust fund, no reason exists for giving the owner of the trust fund a preference over the general creditors, * * * and to assume [the position] of the owner of a trust fund, and as such to assert a preferential right to payment in full

out of the cash fund coming into the hands of the receiver, to the detriment of the general creditors, it [claimant] ought to be held to satisfactory proof of the fact upon which the right to a preference rests, to wit, that the fund coming into the receiver's hands has been augmented and increased by the addition thereto of the trust money, not as a matter of inference, nor as a result of mere entries on books of account, but because the fund or property against which the preference is sought to be enforced has been in fact augmented or benefited by the addition thereto of the trust fund."

That rule was reannounced by this court in Empire State Surety Co. v. Carroll County, 194 F. 593, 606, 114 C. C. A. 435, and again in Mechanics & Metals National Bank v. Buchanan, 12 F.(2d) 891, opinion filed April 28, 1926. The Fifth Circuit announced the same principle in Anheuser-Busch Brewing Ass'n v. Clayton, 56 F. 759, 6 C. C. A. 108.; the Sixth Circuit in City Bank of Hopkinsville v. Blackmore, 75 F. 771, 21 C. C. A. 514; and the Second Circuit in American Can Co. v. Williams, 178 F. 420, 101 C. C. A. 634. See also Boone County Nat. Bank v. Latimer (C. C.) 67 F. 27; Nyssa-Arcadia Drainage Dist. v. First National Bank of Vale (D. C.) 3 F.(2d) 648.

In No. 7090 the court ruled rightly in denying a preference to the claimant, but erred in dismissing the suit. The claim should have been allowed as a general claim without a preference. In No. 7205 the court erred in giving a preference to the claim. It should have been allowed as a general claim without a preference. Each decree is reversed with instructions to set it aside and to enter a decree in accordance with the views herein expressed.

FARIS, District Judge (dissenting). I regret that I am unable to concur with the view taken by the majority of the court in these cases. Discursive dissents serve, I concede, no useful purpose, but ordinarily only conduce to keep alive controversy about questions of law which it were better, perhaps, to settle erroneously, rather than not to settle at all. In the views I feel constrained to express touching these cases I shall take as the basis of argument the case of Larabee Flour Mills v. First National Bank of Henryetta, since both the law and the facts of the two cases are in all essential things similar.

Appellant, as plaintiff, brought this action against the First National Bank of Henryetta, Okl., and Hulse, the receiver thereof, for payment in full, as a preferred claim, of the draft drawn by appellant on the contentions: '(a) That appellee bank, by undertaking the collection of the draft and remittance of the proceeds thereof, became the agent and a trustee of appellant; (b) that, having assumed such relation, it cannot, either by mingling the money or credit it received with the funds of the bank, or by remitting by its own check, instead of in money, change its relation to that of a debtor of appellant, without its consent; (c) that, absent specific instructions, and there were none, it was the duty of appellee bank to remit to appellant in money, and not by its own check, which might, as it did, turn out bad; (d) that money in the hands of a trustee need not be traced by earmarks, but it is enough that it can be traced into the general mass of the assets coming into the trustee's hands; and (e) that by the act of appellee bank, in accepting the drawee's check on itself, and in segregating the fund by issuing its cashier's check for the same, its own assets, which later came into the receiver's hands, were increased by the amount of the draft collected, as of the time the receiver took over the assets of the bank.

All of the above propositions, except the last one, are scarcely disputed by counsel for appellees. They strenuously contend, however, that regardless of the above four fairly well-settled propositions of law, and regardless of the law which applies to a bank while it is a going concern, the right to payment in full of such a draft forwarded for collection only, as a preferred claim, does not exist, unless it shall appear that, by what was done in making the collection, the assets of the bank, coming into the hands of the receiver, were actually augmented, or increased, and that the facts in this case do not show that the transaction had the effect to augment such assets. In short, appellees contend that, before the draft was collected in the manner done here, appellee bank owed the drawee; after it was collected, the bank owed the drawer; that there was therefore a mere change of creditors, and so the receiver got not one cent more than he would have gotten if the transaction had never occurred.

The decisions of the courts are, upon the above question, utterly at variance. Both the state courts and the federal courts quite generally agree that a bank, which takes a draft for collection when the drawer is not a depositor of such bank already, becomes an agent and a trustee for the drawer; that it is the duty of such bank to remit to the

drawer in money; that it cannot, absent specific instructions, become the debtor or depository of the drawer, without his consent, and impliedly against his instructions, by the mere expedient of mingling the collected fund with its own assets, or by remitting in any other form than money; and that, as a corollary to the last proposition, if such a fund be commingled with the bank's funds, it may yet be followed, even though it has no clearly identifying earmarks. In passing, I think the last question is not in the case here, because there was a segregation of the funds arising from this draft, when the bank drew its cashier's check for the proceeds of the draft, and put that check in the mail, prior to the receivership, as is admitted.

But the state courts quite generally hold that, when a bank receives a draft for collection and remittance, and of course from a stranger, who is not a depositor of the collecting bank, and accepts in payment for such draft a check drawn on itself, a trust fund in favor of the drawer is thereby created, which fund may be followed and recovered in full from the receiver of such bank, if the latter shall become insolvent. Hawaiian Pineapple Co. v. Browne, 69 Mont. 140, 220 P. 1114; State National Bank v. First National Bank, 124 Ark. 531, 187 S. W. 673; Goodyear Tire & Rubber Co. v. Bank, 109 Kan. 772, 204 P. 992, 21 A. L. R. 677; Bank of Poplar Bluff v. Millspaugh (Mo. Sup.) 281 S. W. 733.

On the other hand, the federal courts quite generally hold that the test of recovery as a preferred claim is whether by the transaction the assets of the insolvent bank, passing into the hands of the receiver, are increased; and they reach the conclusion that payment of such a draft by a depositor of the collecting bank, by a check of such depositor on his account in the collecting bank, does not serve to increase the assets coming into the receiver's hands, but merely operates to make the drawer the creditor of the bank instead of the drawee.

That the latter view is obviously sound when the drawer is already a depositor— that is, a creditor of the collecting bank—is borne out both by reason and authority. For, when a depositor of a bank draws a draft and deposits it for collection and credit, the relation of debtor and creditor is created between such a drawer and the collecting bank, and the title of the proceeds of the draft passes to the bank. Thereafter the matter is one of ordinary debt, and such a debt is not a preferred claim. But, when a stranger draws a draft for collection and remittance of the proceeds to the drawer, no such relation of debtor and creditor is created, and the title to the proceeds of the draft does not pass to the bank. Nyssa Arcadia Drainage Dist. v. First National Bank (D. C.) 3 F.(2d) 648; Commercial Bank v. Armstrong, 148 U. S. 50, 13 S. Ct. 533, 37 L. Ed. 363; Sweeney v. Easter, 1 Wall. 166, 17 L. Ed. 681. On the contrary the cases seem to hold that the bank becomes an agent and trustee for the drawer, and in such relation it takes and holds the proceeds of the draft. If without title and against the will of the drawer, who is its principal and cestui que trust, the bank may pocket this trust fund and pass it on to its creditors, the situation would seem novel and anomalous, and opposed to all general principles governing agency and trusteeship. Holder v. Western German Bank, 136 F. 90, 68 C. C. A. 554.

A great majority of the cases wherein the federal court doctrine is laid down are cases in which the relation of debtor and creditor, as between the drawer and the collecting bank, already existed, yet many of these cases unnecessarily lay down the doctrine of the necessity of an augmentation of assets. Beard v. Independent, etc., District, 88 F. 875, 31 C. C. A. 562; Clark, etc., Co. v. American Bank, 230 F. 738; City Bank v. Blackmore, 75 F. 771, 21 C. C. A. 514; Nyssa, etc., District v. Bank (D. C.) 3 F. (2d) 648; Franklin, etc., Bank v. Beal (C. C.) 49 F. 606; Jewett v. Yardley (C. C.) 81 F. 920.

As already said, in a debtor and creditor case, the title to the proceeds of a draft deposited for collection and credit passes to the bank, and, if insolvency of the bank occur, the drawer is only an ordinary creditor, and not a preferred creditor, and so I have no quarrel with the doctrine on which the above cases could have been decided, or with the result of the above decisions. Such cases, as well as that numerous class of cases wherein the fund deposited was known to be a trust fund, but which went into the bank in such wise as to create the relation of simple debtor and creditor, are easily distinguished.

Formerly the view was taken that, before a trust fund could be recovered, it must be capable of being traced, and, if it were so mingled with the assets of the defaulting trustee as to be indistinguishable, no recovery could be had. This doctrine seems to have been abandoned in later cases (Peters v. Bain, 133 U. S. 670, 10 S. Ct. 354, 33 L. Ed. 696; Beard v. Independent District,

etc., 88 F. 375, 31 C. C. A. 562; Freling-huysen v. Nugent [C. C.] 36 F. 229), seem-ingly, for the doctrine of augmentation of as-sets. I am unable, however, as already said, to see that the doctrine of commingled as-sets has any place here under the conceded facts. Here I repeat, there was a segrega-tion by the act of the collecting bank in drawing its cashier's check on its corre-spondent bank for the amount of the draft, and in depositing that check in the mail be-fore insolvency occurred as a legal fact. Nor, as far as the facts show, was the fund on which this check was drawn taken over by the correspondent bank on which it was drawn for any debt of the insolvent bank; but the whole of it, unabated by the amount of the check, came into the hands of the re-ceiver.

The rule which requires an augmentation of assets as a condition precedent to putting in motion the numerous equities conceded to exist in favor of the drawer of a draft sent for collection and returns was seemingly an-nounced originally without setting out any definite or satisfactory legal foundation, or any reason at all, for its existence. If it rests, as was said years after it was an-nounced, upon the doctrine that one who has many equities in his favor, stands in no bet-ter case than one who has but one equity in his favor (Empire State Surety Co. v. Car-roll County, 194 F. loc. cit. 603, 114 C. C. A. 435), I am, with much regret, unable to agree; for, while the claims of the appel-lant and ordinary creditors here are being urged on the equity side, yet the right of the drawer is a pure equity and the rights of the ordinary creditors, between whom and the appellant the contest actually is, are purely legal. The latter is trying to fasten a trust on a definite fund, while the former, as ordinary creditors, are trying to recover money due them from their creditor, the in-solvent bank, out of any fund possible.

It is conceded that the great weight of authority in the federal courts, even disre-garding what I may call debtor and creditor cases, which I do not regard as in point, is in favor of the rule that recovery depends on whether there has occurred augmentation of assets through the transaction which oc-curred, and that when a draft held by a bank for collection is paid by the drawee with a check on the collecting bank, there is no such augmentation of assets, but a mere switching of creditors. But I am not able to see how this fact has any such legal relevancy as to put the equities in favor of the strange draw-er on a parity with those of the ordinary de-positors of the bank. The latter became the willing creditors of the bank, the former, if he does become a creditor, becomes such without his consent and against his expressed intent. Many fairly well settled principles announced in the very cases which require such augmentation, and in many others be-sides, seem utterly at variance with the above rule. Some of these principles, so at vari-ance, are: (a) That in case of a draft de-posited for collection and returns no title ever passes to the collecting bank (Nyssa, etc., District v. Bank, supra); (b) that the bank takes the collection as an agent for the drawer (American Can Co. v. Williams, 178 F. 420, 101 C. C. A. 634; Clark, etc., Co. v. Bank [D. C.] 230 F. 738); (c) that it takes the collection as the trustee of the drawer (Holder v. Bank, 136 F. 90, 68 C. C. A. 554); (d) that the collecting bank is bound to accept only legal tender, to wit, money, in payment of such a draft (Bank v. Fed. Reserve Bank [C. C. A.] 6 F.[2d] 339; Fed. Reserve Bank v. Malloy, 264 U. S. 165, 44 S. Ct. 296, 68 L. Ed. 617, 31 A. L. R. 1261; Bradley Lumber Co. v. Bank [C. C. A.] 206 F. 41), and (e) that, if it mingles such a fund with its own funds, the proceeds may yet be followed (Peters v. Bain, 133 U. S. 670, 10 S. Ct. 354, 33 L. Ed. 696), and, ceteris paribus, recovered.

I am led to believe that the error (if it is an error, and I cannot see it otherwise) has arisen from too closely following debtor and creditor cases, in which the doctrine requir-ing augmentation of assets was early, but unnecessarily, announced, and by the laying down of an erroneous initial premise, even if, arguendo, the correctness of the legal con-clusion that there must be an augmentation of assets, be conceded. This error is, I sub-mit, that the courts which have squarely so held (Anheuser-Busch Ass'n v. Clayton, 56 F. 759, 6 C. C. A. 108; American Can Co. v. Williams, 178 F. 420, 101 C. C. A. 634; Clark, etc., Co. v. Americus Bank, supra; Anadorko, etc., Co. v. Litteer [D. C.] 300 F. 222) have considered the situation which existed as of the time when the draft was paid to the collecting bank by a check of the drawee on such bank, and not the situation which existed when the receiver took over the assets; that is to say, the bank, while it was a going concern, paid the drawee an amount of its debt due him equal to the draft it held for collection against him, and there-fore, with such transaction, so far as the re-ceiver was concerned, he was not concerned at all, since his rights did not attach till aft-er the transaction between the collecting

bank and the drawee was a closed incident. At the moment the receiver here became legally concerned, the sum of the situation was that the collecting bank owed the drawee almost $1,000 less than it had owed him the day before, and immediately after it so reduced its debts it got almost $1,000 in its hands which belonged to the drawer.

Nothing need be said of the fact that this case sounds in equity, and that equity sometimes takes a short cut to ultimate results, and regards that as done which ought to have been done. Federal Reserve Bank v. Peters, 139 Va. 45, 123 S. E. 379. Germane to which are adventitious, if not wholly ridiculous, circumstances which, it may be, might have served to change the rulings above referred to. Among these things is the situation which might have arisen from the act of the drawee in taking out of the collecting bank by his check an amount in money equal to the draft, and after walking around the block, or, indeed, without even walking around the block, again paying this same money into the bank in exchange for the draft held by the bank against him. So, also, the cases hold that, if the drawee had paid the draft out of money from his pocket, or by a check on another bank, or even by giving his note to the collecting bank, the drawer would have become a preferred creditor. See cases cited, supra. I am not convinced that there is, in the last analysis, enough legal difference in the latter approved methods of payment, as contrasted with what was actually done in this case, to account for or warrant the rule announced in the majority of the federal cases.

So, while conceding that the majority opinion is well buttressed by many of the ruled cases, I am forced to think that, for the reasons above set forth, these cases are wrong, and so I dissent.