## SANDERS v. STEVENS.
### No. 252.

District Court, S. D. Mississippi, Jackson Division.

Aug. 11, 1931.

Alexander & Alexander, of Jackson, Miss., for plaintiff.

Fulton Thompson, of Jackson, Miss., for defendant.

HOLMES, District Judge.

On January 14, 1931, R. M. Sanders gave the First National Bank of Jackson, Miss., a check for $1,134.06, drawn by one R. W. Manning on the Merchants' & Planters' Bank of Drew, Miss. The check was payable to the order of R. M. Sanders, and indorsed by him. He told the president of the bank, J. B. Stirling, who was also one of the trustees of the Tribette estate, to whom Sanders was indebted, to collect the check, and, out of the proceeds, to pay the interest of $320 on his indebtedness to the Tribette estate and turn the balance over to him in cash. Sanders was not a depositor of the bank, and had no account of any kind with it. The president agreed to make the collection and handle the proceeds as requested. The check was sent on January 14, 1931, directly to the Bank of Drew, with instructions to remit for it to the Bank of Commerce & Trust Company, of Memphis, Tenn., for the account of the First National Bank of Jackson, Miss. The remittance was accordingly made by the Bank of Drew to the Memphis bank on January 17, 1931, which latter bank credited the proceeds to the First National Bank of Jackson, and at the close of business on that day the Jackson bank had a credit balance with the Memphis bank of $18,450.65, but at that time the latter bank had outstanding collection items, which had previously been forwarded to the Jackson bank, in a large amount in excess of the credit balance.

On January 20, 1931, the First National Bank of Jackson closed its doors on account of insolvency, and a receiver was appointed

by the Comptroller of the Currency. The Memphis bank then charged all of its claims against the credit balance of the Jackson bank, absorbing that balance entirely and leaving unpaid the sum of about $15,000. The Memphis bank never turned over to the receiver the proceeds of the check of $1,134.-06, or any sums whatever.

By this suit the plaintiff seeks to follow the proceeds of his check into the possession of the receiver and there have it declared to be a trust fund and paid to him as a preference claim. Admitting his inability to trace and identify the specific money, he claims that the entire assets which came into the hands of the receiver were increased in the amount of the check, and that in equity he is entitled to have a first lien impressed upon the same as a whole and to be given priority over the general creditors and depositors in the payment of claims against the bank.

As the check in this case was given for collection merely, the bank, through its president, expressly agreeing to collect the proceeds, pay the interest of $320 to the Tribette estate, and deliver the balance immediately to Sanders himself, it is quite plain that the bank took no title to the check, but that the relation of principal and agent existed, and that, as between the parties, the property in the check and its proceeds remained in the plaintiff. Anheuser-Busch Brewing Association v. Clayton (5th Cir.) 56 F. 759; Larabee Flour Mills v. First National Bank (8th Cir.) 13 F.(2d) 330; Id., 273 U. S. 727, 47 S. Ct. 238, 71 L. Ed. 861; Ellerbe v. Studebaker Corporation (4th Cir.) 21 F.(2d) 993; Nyssa-Arcadia Drainage District v. First National Bank (D. C.) 3 F.(2d) 648.

That the proceeds of the check were misapplied cannot be doubted, and that such misapplication rendered the bank, as agent, civilly liable to the plaintiff, as principal, for the full amount thereof is equally clear. But the plaintiff is not simply contending for recognition by the receiver as one of the general creditors of the bank. He is asking priority of payment, not only because of a breach of the relationship of trust which existed between him and the bank, but because the assets of the bank which came into the hands of the receiver were augmented in the transaction by the proceeds of the check.

The foundation of the claim is the equitable right of following trust funds or property into the hands of any one not a bona fide purchaser for value. Central National Bank v. Ins. Co., 104 U. S. 54, 69, 26 L. Ed. 693. Formerly, the right depended upon the ability of the owner to identify the property, and attached only to the identical thing in its original form. It was later extended to property in its converted form, to its proceeds, or to that which was procured in place of it by manufacture, exchange, purchase, or sale. "But if it became confused with other property of the same kind, so as not to be distinguishable, without any fault on the part of the possessor, the equity was lost. Finally, however, it has been held as the better doctrine that confusion does not destroy the equity entirely, but converts it into a charge upon the entire mass, giving to the party injured by the unlawful diversion a priority of right over the other creditors of the possessor. This is as far as the rule has been carried." Peters v. Bain, 133 U. S. 670, 693, 10 S. Ct. 354, 361, 33 L. Ed. 696.

The receiver in this case is a trustee for lienholders, depositors, general creditors, stockholders, and all other persons who may be beneficially interested in the assets of the bank. The burden of proof is on the plaintiff to show that the funds which came into the hands of the receiver were swollen by the proceeds of his check. If he is unable to trace the same into the defendant's possession, the burden is not met, and the preference must fail. Schuyler v. Littlefield, 232 U. S. 707, 34 S. Ct. 466, 58 L. Ed. 806.

The facts as submitted do not supply the necessary proof. Not only do they fall short of it, but they show the contrary. The check was sent directly to the Bank of Drew, which, according to instructions, remitted the proceeds directly to the Memphis correspondent of the sender. While the proceeds were credited to the Jackson bank on the books of the Memphis bank, it does not appear that the credit after that time was ever utilized by the former, or that there was ever a moment when it was anything more than a chose in action which was the asserted subject of a set-off against an admitted indebtedness of the Jackson bank existing in favor of its Memphis correspondent. The asserted right of set-off was exercised, and no part of the proceeds of the check was remitted to the Jackson bank. It further appears that no part of such proceeds or any other sum whatever was paid over to the receiver by the Memphis bank. Consequently, there is no fund or property of any kind, either in its original or con-

verted form, specific or commingled, which came into the hands of the receiver as a result of the transaction between Sanders and the bank. The assets in the hands of the defendant not having been augmented as claimed, no lien may be impressed upon them to secure priority of payment as asked in behalf of the plaintiff. He must be relegated to his position as a general creditor. Spokane County v. First National Bank (9th Cir.) 68 F. 979; Macy v. Roedenbeck (8th Cir.) 227 F. 346, L. R. A. 1916C, 12; Mechanics & Metal National Bank v. Buchanan (8th Cir.) 12 F.(2d) 891; Farmers' National Bank v. Pribble (8th Cir.) 15 F.(2d) 175; Rorebeck v. Benedict Flour & Feed Co. (8th Cir.) 26 F.(2d) 440.

This is not a case like Commercial Bank v. Armstrong, 148 U. S. 50, 13 S. Ct. 533, 535, 37 L. Ed. 363, where the relation, as to uncollected paper, was that of principal and agent, which changed to that of debtor and creditor, after collection, by reason of an agreement permitting the collecting bank to hold the proceeds for a definite period. In that case the preference was denied by the Circuit Court (39 F. 684) on the ground that the "collections could not be traced, because they had passed into the general fund of the bank," and by the Supreme Court for the "more satisfactory reason" that, under the arrangement between the parties, "the relation of debtor and creditor was created when the collections were fully made." If the language of Mr. Justice Brewer, who wrote the unanimous opinion of the court denying priority, that a collection by a subagent "was the same as though the money had actually reached the vaults of the" agent or collecting bank, be relied upon for any applicable weight here to sustain the proposition that the proceeds of plaintiff's check came into the possession of the First National Bank of Jackson, it may be answered that the contention is unnecessary, so far as rendering the agent liable as an ordinary debtor, because the funds were remitted by the subagent, as directed, to the Memphis bank, and applied to the credit of the Jackson bank.

■ Liability as debtor to the owner for the value of property misappropriated exists whether the property can be found or not, but impressing a lien upon it for the debt is a different matter, and cannot be done, unless the property can be traced with reasonable certainty into the possession of the defendant, who in this case is the receiver.

■ In order to fix a lien upon funds in the hands of the receiver, it is not sufficient merely to show that, before the receiver was appointed, while the bank was open and in operation, funds of the plaintiff came into its possession, "actually reached the vaults" of the bank, but they must remain there and pass into the hands of the receiver. American Can Co. v. Williams (2d Cir.) 178 F. 420; Lucus County v. Jamison (C. C.) 170 F. 338.

■ The further suggestion is made that plaintiff's demand has the elements of a preference claim, in that a reduction in the First National Bank's indebtedness to the Memphis bank decreased the total of the outstanding claims, and thereby, in effect, increased the value to the general creditors of the assets of the defunct bank. Several considerations repel this suggestion. First, it seeks to impress a lien upon assets in the hands of the receiver, not because they have been augmented by funds of the plaintiff, but because the total indebtedness of the bank has been reduced and the liabilities of the receiver diminished, when there is nothing in the record to indicate what any of those amounts are now or were at any time. Second, to supply the missing proof would not change the result, because, since it does not appear that any part of the indebtedness to the Memphis bank was secured by collateral which was surrendered or otherwise, the suggestion would substitute priority for equality to the extent of $1,134.06. If the remittance had not been made to the Memphis bank, it would merely have been a claimant for $1,134.06 more, and would have been entitled, not to that additional amount in full, but only to pro rata dividends on that amount. The benefit to the general fund is limited to the dividends on the amount of the check, and these will be paid by the receiver to the plaintiff as a general creditor. Third, and without reference to either of the two preceding reasons, no statute authorizes such a preference, and the equitable doctrine of following trust funds has never been extended to such lengths. On the contrary, the proposition has been definitely repudiated. City Bank of Hopkinsville v. Blackmore (6th Cir.) 75 F. 771 (opinion by Judge Taft, Judges Lurton and Hammond concurring); Empire State Surety Co. v. Carroll County (8th Cir.) 194 F. 593; Titlow v. McCormick (9th Cir.) 236 F. 209; Anadarko Cotton Oil Co. v. Litteer (D. C.) 300 F. 222; Dudley v. Richards (8th Cir.) 18 F.(2d) 876;

Burnes Nat. Bank v. Spurway (D. C.) 28 F. (2d) 40.

The specific relief asked will be denied, but under his prayer for general relief the plaintiff is entitled to a decree against the receiver adjudicating the amount due him by the bank. The costs should be taxed against the plaintiff, as the defendant has not contested his rights as a general creditor. A decree may be entered accordingly.